May it please the Court, I am Robert John, counsel for Michael Hachez. I'd like to begin by discussing one of the two cases upon which the District Court relied, the Great Divide case, to the extent it involved the popular application of A.S. 21-89-100. That case which occurred after that statute was passed, the Supreme Court had this language which I had not specifically pointed out to the Court, but it says in there, another possibility is that Great Divide might have chosen to defend without a reservation of rights in order to maintain control of the defense. Now let's look, the statute is really designed to allow communication between CHI counsel and the insurance company, and what that does is it allows the insurance company to be informed, it allows it to have input, but it doesn't allow it to have control. In this case, Mr. McConaughey did an exemplary job, he investigated the case, he continually kept State Farm informed about what was happening, where the case was at, he invited State Farm to participate in discovery at that time if it chose, if it elected not to. It comes to the point where he says, hey, we've got now a third settlement offer here for less than the policy limits, my advice as CHI counsel, and here's my analysis, is that the liability of Mr. Hachet is a million dollars or more quite likely, and here it says reasonable less than the policy limits, I advise him to accept it. Now at this point, under the statute, the State Farm could have jumped in under sub H and said, hey, we have the right to try and sell it ourselves, which it could have done, but it didn't, and it could have gone to Mr. Murdy's perhaps, the counsel for Mr. Hachet, and said, you know what, Mr. Murdy's, $300,000 you're offering to settle, we're not agreeing to provide coverage so far, but I'll tell you what, you can take $300,000 in the bush, but we'll jump in, we'll give you $200,000 in hand. State Farm didn't choose to do that, it continued to perpetuate the conflict by suddenly saying, well, now your actions as CHI counsel in advising your client to settle the case are going to create yet a new defense to coverage, and what we have there is a situation where State Farm is finding itself in a better position by reserving its rights than it would have been if it had either opted to provide coverage, in which case it would be responsible, or if it had chosen completely to deny coverage, in which case the individual insured can get his attorney, settle the case, and then go back and litigate the coverage defenses. So what we've added now is State Farm is saying not only do we have coverage defenses, but by virtue of the CHI counsel situation, we've manipulated that, leveraged the CHI counsel situation into yet a new defense, a policy defense which makes no sense whatsoever. Under the insurer's theory, would there still be a bad faith claim available or not? There could be a bad faith claim available against the insurance company. It's our position in the sense that if the insurance company is continuing, as it did in this case, to intrude into the CHI counsel situation, and our position is that by threatening new defenses, you're kind of discouraging settlement and continuing to control and manipulate the defense. But you said that the result of their theory is that they're essentially better off. But isn't there still a bad faith claim available against them, which would essentially say you took this position because of your conflict, and we ended up having to pay more, therefore you, it's just an ordinary bad faith claim. Is that by the boards on their theory? There could well be a bad faith claim as well, and it's our position that there was bad faith in this case because they failed to investigate and to take But you ended up accepting it. You ended up accepting the settlement, and they're saying as a result, you breached the contract. And what I'm asking you is, even if that were all true, you accepted that you breached the contract, they don't have an obligation to the contract. Do they still have a bad faith obligation if they unreasonably didn't agree to the $300,000? Yes, there would be a bad faith obligation. That's a risk then. I mean, they, look, you're settling with our money, and we don't, you know, you can settle if you want, but you can't settle with our money. And if we are wrong about it, if we should have consented to it, you know, we had an obligation to consent and didn't, then you bring in a bad faith claim, and we'll have to pay the difference. So, I don't, I just don't see where the inequity is of having them take that position. How you can sort of force them to accept a settlement that they may in good faith believe is not, you know, as far and excess of what the case is worth? Well, Your Honor, they ordinarily wouldn't be required to accept a settlement. What would happen is the settlement is made, and then you fight about the coverage defenses, which were the first two defenses they asserted, the ones the court never got to, the defense of the intentional acts exclusion, and the defense of the meaning of the word occurrence. So, those are the... Would they also have a defense at that, you sort of start multiplying documents at that and assume that they also would have to have a defense that the, even if there was coverage that the settlement was unreasonable? I mean, they can't simply have to pay whatever you agreed to pay. No, and that would be something that they could have argued, and perhaps they could still argue on remand, is that this was an unreasonable settlement, but they've never made any claim that the settlement was unreasonable. But do they have to make, take the position that the settlement was unreasonable? What if they say, look, this is a pretty good settlement. We think that if we could settle on those terms, you know, that would be very nice, but we happen to think that this guy will settle, you know, settle for less. That in the end, we'll push cups to shove and we're forced to go through litigation and get expert witnesses and pay for his lawyer and all that, and that he'll take a hundred. Because three hundred is a good deal, but a hundred is an even better deal, and we think that if we, since it's our money on the line, and since we're paying for the lawyer and, you know, we're paying the freight here, that it's worth holding out for a better settlement, even though this one is a good one. I mean, they don't have to prove that this is an unreasonable settlement, right? Under Alaska law, they do, Your Honor. Alaska law... They have to take, I mean, there's a range of reasonable settlements. You agree with that? Yes. In any one case, there's a whole range, often a fairly wide range, of what one might view as a reasonable settlement. There are low bar settlements and there are high bar settlements, and you take the position that they have to accept the first settlement that comes along that falls within the reasonable range, even though they say, gee, if we hold out for a while longer, we think we can get a much better, you know, we can get the plaintiff to accept a much better deal. Well, State Farm doesn't have to accept it in the sense they still have reserved their defenses on coverage. They could have gone to Mr. Mertes, the Hachet attorney and... No, no, no, but they say, look, we realize we might not have a case. Let's say we concede there's coverage. We don't, I mean, you know, I don't know what happened in particular, but in a particular case, they say, look, there's no doubt that we have coverage. We don't really have a viable defense on coverage. We just think the money is not as good as it could be. This is a, you know, this is a contest. Litigation is a bit of a crapshoot, and we've done a lot of litigation. We handled a lot of these cases, and we think this kind of case will, in the end, settle for a lot less than is being offered today. And why can't they take that position? They could, Your Honor, but if they're going to concede there's coverage, they should just jump back in the case and say, you know what? We've re-evaluated. We're not reserving. We're going to take control. I'm sorry. I don't know. I'll stay about it. They say, look, we, well, fine, we've got whatever defenses to coverage we have. We have defenses. We don't have defenses. Whatever the story is there, we'll, you know, it'll get resolved. But let's concede coverage hypothetically, you know, for purposes of this. Okay? So let's put that question aside. We still think we can get a better deal. They could, if they think they could get a better deal, they could try and settle it later for that amount in the context of having a coverage dispute. Not if the insured has settled the case for more. Well, no, Your Honor, because if the insured had settled it for more and there's still a dispute about whether there's insurance coverage, the insurance company could say, look, you've got a $300,000 judgment. We're still fighting about coverage defenses. We think it's an intentional act and it's not an occurrence. So you've got your judgment, but you may get nothing out of it. But I'll tell you what, right now, we'll forget about our coverage defenses and here's $100,000 because we think that's a reasonable settlement amount and you're going to get that bird in the hand as opposed to fighting over it. Okay, we want to get that up. Plus, we think you should take less because, you know, in the end, if we litigate this thing, you might lose altogether. So in addition to the fact that there might not be any coverage, we also want to really, really squeeze you on the amount of money you're going to accept on the client. Your Honor, I think it goes back to the whole point of having shy counsel in the first place is the Alaskan Supreme Court created that concept based upon the conflict. It's an ethical consideration that may exist when an insurance company reserves coverage based upon coverage defenses. What is the ethical conflict? The problem here, as I understand it, the reason for the conflict is the flip side. That is that your client may end up paying the money because the insurance company is saying that they're not conceding coverage. Consequently, your client has an independent interest in this amount as well. Is that right? Yes. So if the insurance company has veto authority, then the defendant also has to have veto authority unlike usually because he is not being assured that the insurance company is going to pay him. Correct. The defendant in this case is listening to the advice of shy counsel and is agreeing to accept it. And it's still subject to the coverage defenses that exist. But our real problem here is the whole process of having shy counsel and settling the case has been turned into a new defense that didn't exist previously, a failure to cooperate defense that has now become the basis. Well, it existed previously except for the fact that we're in the situation in which the insurance company is agreeing to pay the coverage. The insurer has no particular interest unless it's over the policy amount, but if it's within the policy amount in refusing coverage, and therefore it makes sense to put to him refusing a settlement. So he's being uncooperative if he nonetheless refuses it. But here he has a very strong interest in the amount of the settlement because he may have to pay it. Yes. And that's why the insured has to evaluate the reasonableness of the settlement. He's therefore less likely to accept an unreasonable settlement as well. Yes. So that's why this is a reasonable settlement because why would he want to accept a million dollar settlement when there's a risk of coverage? Where here the insured has accepted a reasonable settlement, his attorney did a thorough analysis and said, you know what, this is about a third So what do you do with the statute now? I mean, this all makes lots of sense, but after that, at some point here, Alaska passed a new statute, and the new statute seems to govern shy counsel situations, and it says nothing in this section relieves the insurer of the duty to cooperate with the insurer as required by the terms of the insurance policy. So what do we do with that? I think we have to distinguish here between cooperation and control, Your Honor. There's cooperation here, and the whole statute is kind of premised on cooperation. There's a flow of information from shy counsel within the ambit of what's not subject to the dispute between the insured and the insurance company, back to the insurance company, and that's the cooperation that we have here. But I don't think you can reconcile that language, if you want to read it the way that Stefan's contending with the position of the Supreme Court in the shy counsel case, or subsequently in Great Divide, which is after the statute, where they had the language I started out with, where they said is that the insurance company might have chosen to defend without reservation rights in order to maintain control of the defense. Well, if control of defense is with shy counsel and the insured, they have to be able to make the decision to settle the case if that's in the insured's best interest. So what I would say is the court really is concerned. Well, certainly they can do it. The question is whether they can bind the insurance company. I mean, the client can always settle the case. What you want to do one step further is, you know, you want to say is once you get in the situation that the client or the insured can actually bind, you know, once he gets a settlement and counsel tells him this is a good deal, he can decide both for himself and for the insurance company that this is a deal we're going to accept. Yes, he does that, Your Honor, but that is still subject to then the insurance company going back and ultimately litigating what are called the coverage defenses. So the insurance company's position, as I understand it, isn't really whether they're bound or not. It's that the whole contract's now gone up in smoke, not with regard to the amount, but with regard to anything. I mean, it may be that they might be able to contest the amount somewhere down the line, but that's not what they're saying. They're saying they now have no obligation to do anything, including even consider coverage. Is that right? That appears to be their position, but then what is the purpose of having trial counsel because trial counsel is going to basically create the situation time after time where trial counsel will recommend repeatedly to people that, you know what, this is a reasonable settlement offer. You should accept it. Well, it's probably going to make it much easier to bring a claim for bad faith failure to settle because at that point you have this independent lawyer saying this is a reasonable settlement. They won't settle it, and it then goes to trial and the insurer gets stuck for a bad faith claim. It seems to me it would be much easier to prove than an ordinary case. And there may well be a bad faith claim that comes out of it, and we've alleged facts that I think create a prima facie case of it, so that's one reason as well that you can't really just say, oh, if there's a breach here, that's the end of the case because you still have to look at, as the last Supreme Court said... But also, the strange problem here is that the insurance company, even if they agreed to it, wasn't agreeing to it. In other words, the whole problem is that they were reserving the right to agree to an amount but not to agree to pay that amount. Right? So what they're asking for is the ability to say, if we have to pay, we don't want to pay that amount, we'd rather pay less, but we're not saying we're going to pay. So they're not settling, really, because they're not agreeing to pay the amount. And that's really where the conflict comes in, because they have dual interests at that point, because they're balancing against an amount below a breach and how likely it is they're going to have to pay anything. That's the Chi Council problem, essentially. Yes, and they're weighing that and making their decision, and they're entitled to whatever decision they want there. Maybe we should shift this off to the last Supreme Court. This is becoming too difficult for my... Well, I was going to suggest that. I mean, it is an issue that's really... I don't mean too difficult in a logical sense. I mean, as a policy matter, this seems... And the more we talk about it, the more weighty it seems in terms of Alaska, as opposed to... What does the public court hear? I think you're honest and correct, and I was even going to suggest that, because this is... Why don't we hear from a political counsel? We've heard a lot from you. We'll give you a little time for rebuttal. Let's see what counsel from the insurance company has to say. Thank you, Your Honor. I'm sorry, unless you have more questions. Good morning. My name is Rod Sisson, and I have the privilege to represent State Farm before this panel this morning. How are you? Thank you. How are you? Unless there's an immediate question from the court, I would like to address a correction. Mr. Roberts cited Great Divide at the beginning of his argument this morning as being a case that was decided after Alaska Statute 2189-100. And it's true, it was decided afterwards, but the important date is not the date of the decision. It's the date of the accrual of the cause of action that was addressed by that decision. And in Great Divide, the date of the accrual was 1993, whereas B.S. 2189-100 applies to cases accruing after August 7, 1997. All right. Is there any Alaska case addressing the statute? There is, Your Honor, but it's over on my desk. No, I think it is here. It's one statute on one page. Doxy v. Doxy 80 Pacific 3rd 225, which I did not find to be instructive for this case before the court this morning. I did not find that case to be addressing that for purposes of our inquiry. So there is no Alaska case? I beg your pardon? So there is no, aside from the fact that there not being any Alaska case resolving this issue without the statute, there's none addressing it with the statute either? Not that I'm aware of. And I might add that the other two cases that were discussed frequently in the briefs, which were Estes and the Grace case, also accrued prior to 2189-100. Let me see if I can summarize what I thought I understood Mr. John to say. Isn't he really saying that the insurer has a choice? If it wishes to reserve its coverage defenses and agrees to the appointment of CHI counsel because of the inherent conflict that that creates, doesn't it give up the right to permit the insured to settle the case on whatever terms the insured thinks are in his best interest and then litigate the coverage question separately? And if the insurer wins, that's the end of it. If the insurer loses, that's the risk it chose in not wishing to participate in the settlement. Is it any more complicated than that? AS Alaska statute 2189-100G addresses that topic. The statute says that nothing in this section, and this section is referring to the entire scheme of 2189-100, nothing in this section relieves the insured of the duty to cooperate fully. But it's not self-evident that agreeing to settle under these circumstances after giving the insurance company every opportunity to participate and writing an 11-page letter about an assessment of the case is not cooperating fully. Well, the cooperation clause that I was just quoting also includes, that I was about to quote, I'm sorry, includes the section that says the insured should not assume obligations voluntarily. But you're asking about the statutory concept of cooperation and the contracts. It doesn't actually use the word cooperate. The contract talks about something like duties of the insurer. It doesn't use the word cooperate, that they match. They don't necessarily match. Well, what I was quoting from the statute is that the insured must cooperate fully, quote, with the insurer as required by the terms of the insurance policy clause. I'm sorry, the insurance policy doesn't use the term cooperate, does it? Well, it does under the cooperation clause insofar as it says, you shall cooperate with us in seeing that these duties are performed, and there's a list of duties, and you go down to E, and that duty is the insured shall not, with his own cost, make voluntary payments or assume obligations. In this case, assuming an obligation is what occurred by accepting. Well, is it read that broadly, or should we read that clause to mean the insured has to continue to cooperate in discovery, provide a flow of information, give testimony on deposition, turn over documents to the insurer during the pendency of the litigation. The insured cannot go out and hire expert witnesses or investigators without getting approval, if he's going to look to the insurer to pay those fees. But does it mean that he cannot accept a reasonable settlement offer, knowing that in doing so in the face of a reservation of rights, he may very well be stuck with having to pay whatever the settlement value is? And as long as the insurer is given reasonable notice and an adequate amount of time to investigate, and it chooses not to approve or participate in the settlement, he's cooperated within the meaning of the law, and now the insurer has to make a hard choice. But he has not cooperated within the meaning of 2189-100, which says he has to cooperate fully as required by the terms of the insurance policy, and then you look at the term of the policy and it says cooperation includes not assuming an obligation. But your position is that that's an obligation that he's assuming that the insurer has to pay. And I'm asking you, is that really an obligation within the meaning of the statute? Because if you're right and your coverage defenses are valid, the insured insurer will never have to pay that obligation. The obligation will be binding on the insured, and he's going to have to satisfy it however he can but without the proceeds of the policy. If the insurer is correct, but what happens typically, and especially in a case such as this, which is an intentional acts case, is that insurers will reserve rights, and if there's some question, even though in this case it was a shooting, certainly it was good faith on the part of the insurer to reserve rights on that. Nobody's questioning that here, but it was a shooting. So typically what happens is that the insurer reserves rights and the case proceeds, and there may be various junctures where settlement is discussed. It may proceed beyond that juncture. It may proceed through discovery. There may even be additional parties added. There may be trial preparation. There may be a mediation. Any number of steps along the way with the reservation of rights in place, and throughout those steps the insurer, whose counsel may participate, this is one of the other provisions of 2189-100G, at the beginning of that paragraph, it allows both sides' counsel to participate fully, and of course the insurer's counsel is going to be looking at these coverage issues and see how the evidence unfolds. So doesn't that do two things? First of all, it makes the case, from your position, it makes the case essentially un-settlable unless the insurer agrees to coverage, because the insurer is never actually settling. The insurer will say, when it comes to $300,000, the insurer is never saying, fine, we'll pay the $300,000. The premise is, sure, if you want to do that, go ahead, and then you have veto rights. But if you're not going to do that, if you're just going to say, well, I'm not going to agree to pay the $300,000, but I'm going to tell you you can't, that's your position. I would disagree. As the case proceeds and as discovery occurs and perhaps several settlement discussions occur, the case may very well settle. Yes, but it only settles settles if the insurance company says, all right, forget it, we'll pay it, we'll give up our coverage. But as long as they maintain their coverage dispute, they're never actually settling. That is probably true, or unless the court orders them at some later point to pay, the insurer should not give, unless they choose to, should not be deprived of But that's a very strong part of the settlement, because they're maintaining the right to tell the insured that he can settle, even though he's going to be left out in the bag, but they're not saying, all right, we're going to pay him. I would submit that there's nothing unfair about that. There's a contract and there's a statute that says the contract should be honored, and there's an insurer who's paying for a defense, and that's a valuable thing, and the insurer is participating in the defense as allowed by the statute through their counsel as well as the insured being defended. So the other thing has to be true, too, then. So if the defendant in the underlying lawsuit comes in and says, I'll settle for $300,000, the insurance company says, great, and the insurer says, no way, because I may have to pay it and I think it's too much, they have to have a veto power. Or there could be a scenario related to this. That has to be true if you're looking at it that way, right? I'm sorry, Your Honor. I correct that that has to be the case on the way that you're looking at the issues here. Maybe I misunderstood your question. That the insurance company, because they're not actually settling, they're not agreeing to pay anything, even if they wanted to settle, they can't settle. That the insurance company could not settle even if they wanted? Yes, because unless they're going to give up their coverage dispute. That's true. If there's an opportunity to settle, given all of the risks for the insurance company, including the coverage risks, and they decide that they want to settle. They can't continuously accept the $300,000 because the insurer can always veto. I believe that's it. I believe if the insurance company chooses to settle the case, inherent in that decision is going to be a choice to abandon its coverage dispute. If they choose to do it unilaterally, do they choose to say, look, we're settling and we're taking over. Suddenly, they're giving up their coverage dispute. Can we talk a little bit about the, I mean, assuming you were right so far, can we talk a little bit about the remedy? I mean, the thing Judge Berzon alluded to earlier. Your position is that once there's a breach here, the insurance company is off the hook.  They have no further obligation in the case. Why is that the appropriate? Assuming we are with you so far, why is that the only remedy or the appropriate remedy? Why wouldn't the more appropriate remedy be that if, in fact, it is later determined this was unreasonable not to settle for the insurance company doesn't have to cover it? Judge Kaczynski, I think your comment earlier that the insured certainly could settle the case anytime they want. It's just that they may have to pay for it themselves. And that's the way the contract of insurance reads when it says that they should not assume obligations except at their own expense. Well, but it's one thing to say, look, they assume an obligation and they may have to pay. It's another thing to say, in that point, you give up any claim to coverage. You give up any claim to further payment of counsel fees. Basically, at that point, you cut the insurance company loose of all obligations by doing that. That question is being quite the remedy seems to go beyond. Frankly, I've not explored this this avenue, this alternative. But as I'm standing here, what I'm imagining the court is suggesting is that instead of avoiding the policy, that the policy would still be in existence for further proceedings, even though the insurance has accepted the judgment. I'm speculating. I mean, that's one possibility. But that somehow the insurance company's obligation under the policy will be limited by this because they were not consulting. That was not obtained from this decision and that they could then dispute the settlement amount. You know, things can be enforced, but then they could come back and the liabilities found to exist. They could they could say, but you settled for on our behalf for way too much. Now, even though we concede liability or even I mean, we concede coverage or even though we lost on coverage as a result of the court ruling, you don't get the full settlement amount because we think we could have settled it for less. And you dispute that. And at that point, the insurance company is on the hook, not for the full settlement amount, but for some lesser amount that they can make improve without. That would be another remedy. Typically, if there is a substantial breach of a condition of the policy, the policy is voided. That's typical. But this isn't typical because the insurance company essentially is saying that the contract doesn't apply. And what's hard about this is the insurance company is asking the insured to act as if to abide by the conditions of the policy. But the insurance company at the same time is saying, well, the policy even applies to this whole situation. So I mean, one way to read it, absent the statute, which obviously has to be dealt with. One way to read all of the conditions is they only apply when everybody agrees that the policy is applicable to this. But once you don't agree that the policy is applicable to this, the conditions don't seem terribly pertinent. And then you're taking a dual view of the contract in order to argue that once they don't cooperate, the contract disappears. Because you're not agreeing the contract's even there to begin with. Looking at a historical perspective, the statute has been around for nine years now and try for longer than that. The manner of proceeding with cases when there is a reservation of rights has obviously worked fairly well because there aren't a lot of cases construing this. And I think typically what goes on is that the procedure that I outlined a little bit earlier, very familiar to everyone who is familiar with litigation. The purpose is fulfilled to have independent counsel. The purpose is fulfilled to have counsel for the insurer. Well, it's independent counsel to a point that you want to have us declare that if the insurer agrees to a settlement without the permission of the insurer, that breaches the cooperation clause of the contract relieving the insurer of all further responsibility for the case. And I'm trying to square that with the concept that independent counsel means independent. It means that the lawyer has an obligation solely to the insured to represent the insured in his best interest. And if a reasonably competent lawyer would decide that accepting $300,000 is an appropriate settlement of this particular case and exercises that reasonable professional judgment, that that nonetheless constitutes a breach of the cooperation clause relieving the insurer of any obligation. And I find that result to be very curious and inconsistent with the whole idea of why he needs separate counsel. I would respectfully differ with you, Judge Thomas. I interpret the Kumis, Chai, and other progeny on independent counsel as addressing a potential conflict in the defense part of the dichotomy of defense and identity. Because the more the insurance company thinks it doesn't have coverage, presumably, the less likely it's going to be to agree to a reasonable settlement. And so the more likely it is that the insurer is going to be left holding the bag. And yet the insurer's counsel's determination of the insurer's own interest isn't going to be reassured. I'm sorry, the claimant's isn't going to control. The whole contract is going to go away. So you do have these interests that are running off in opposite directions. The more the insurance company doesn't think it's going to have to pay, the more they can sit there and say, well, forget it. We're not going to agree to this. Even though it's a great deal for the insured. I'm sorry? Even though it's a great deal for the insured. For the insured. For the insured. Yes. And so we send this to them. But the purpose in all of those scenarios, the purpose of having independent counsel is still being fulfilled. And that is to have counsel that is not conflicted for the purpose of defending it. But then his opinion is to be completely disregarded or else the whole contract goes away. The whole insurance policy goes up in smoke. But the law provides for the insurer having a say in settling the case. And the insurer is still on the hook, as it were, for indemnity until it either pays and settles the case or it wins on the coverage questions and it doesn't have to pay anything. But why shouldn't it have to make a choice? I mean, what's wrong with declaring that once it reserves its coverage rights, it gives up the control of the insured's defense and must allow the insured's counsel to exercise his reasonable professional judgment and accept a settlement and run the risk that it may ultimately have to pay that amount if it loses in the subsequent coverage litigation? As a matter of policy, what's wrong with that rule? Aside from the fact that the statute clearly provides for the insurance company not giving that up. The statute clearly doesn't say that. So that's the issue of its statutory interpretation that is ambiguous. But I don't even know as a matter of legal policy why that's unfair to the insurers of the world. Judge Beislein, in his decision in order, mentioned that particularly in cases where familial litigation is going on, such as this case, which is a father and son, there's the risk of collusion. And that's one of the policy reasons. You're not arguing for a rule based on that. You're arguing on a rule that would apply to complete strangers. The argument, the way you're making it, would apply to complete strangers. As well. As well. But particularly in this case, this is a concern. This is an unusual case, but most of the time. But I would not want to lose sight of this particular case in doing so. I have one last question. What is your answer to the question I initially asked about the bad faith claim? On your theory, suppose we accepted everything that you're saying. Would there then be a bad faith claim against you for not accepting a reasonable settlement of $300,000? Aside from, even if there's no coverage? And if I could ask for clarification of that question. Are you asking me if we were to, for example, if we were to prevail in this proceeding, and I'm assuming no coverage, still you have left, let's assume that the $300,000 was a reasonable settlement. No, I'm not asking if you prevailed in this proceeding. If things unwind the way you say they should have. That is, if Mr. Hatchet had turned down the settlement because you told him to. And ended up being responsible for $500,000. But there really was no coverage. Are you then responsible for the $500,000? If I understand. It was a reasonable settlement. You refused it. Yes. They therefore refused it, as you say they should have. All right. They ended up liable for more than a reasonable settlement, and you went on coverage. And we went on coverage. All right. Are you then responsible on a bad faith accord? I don't see why we would be. Because you made him responsible for $200,000 more than he had to be. But we didn't do anything improper in doing that. Yes, you did. You turned down a reasonable settlement, is what I'm positing. But it has to be reasonable under all of the circumstances, and under the circumstances of the coverage litigation, it was reasonable to turn it down. Fine. That just can't be right. And why cannot it be right? The other way it can work is this. It could work the way it happened here. The policy provides that the insured can accept at his own expense. And so if he felt that he was going to lose on the coverage and he saw a good deal, he could grab it knowing that he's going to have to pay for it. So should we send this to Alaska? Your Honor, I don't think you need to do that. I think the statute and the wording of the policy is clear enough that we don't need to send it to the Supreme Court. You can tell it's fair to us. I'm sure you can tell. Why don't you guys just settle this case, you know? It's an atypical case, right? Do you really want to be making law in this atypical situation? Here you are. It's close to lunchtime. A lot of good restaurants here in Anchorage. Why don't you take opposing counsel out to lunch and you guys talk about it. There's got to be a solution. You know, you don't want the 9th Circuit messing with Alaska insurance law. All right? Thank you for the suggestion. Have a nice lunch. Have a nice lunch. The case is arguable as can be. We'll next hear argument in Randall v. Williamson. Do we not have an easel? We don't have an easel, huh? I can't see a thing on it, but go ahead. It's in the record. Okay. I mean, if you expect us to read street signs. No, I will not. I mean, where you put it, I can only see half of it. Maybe you should move it away a little further. Maybe.
judges: Kozinski, Berzon, Tallman